UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMAD HAFEZI, *et al.*,<br><br>    Plaintiff,<br><br>    v.<br><br>CONSTRUCTION & DEVELOPMENT, INC.,<br><br>    Defendant. | Civil Action No. 04-2198 (CKK) |

**MEMORANDUM OPINION**
(April 14, 2006)

Plaintiffs Samad Hafezi and Helga Merz-Hafezi (collectively, "Plaintiffs") bring this action against Defendant Construction & Development, Inc. ("CDI" or "Defendant")) alleging that, during the course of construction work on a neighboring property, CDI caused structural damage to Plaintiffs' property; disrupted telephone, cable television, and plumbing services to their property; and interfered with their quite use and enjoyment of the property.  Currently before the Court is Defendant's Motion for Summary Judgment, which contends that Plaintiffs' claims are barred by the doctrine of *res judicata* following the District of Columbia Court of Appeals' decision in *Hefazi v. Stiglitz*, 862 A.2d 901 (D.C. 2004).[1]  Upon a searching examination of Defendant's motion, Plaintiffs' Opposition, the attached exhibits, the relevant case law, and the entire record herein, the Court shall deny Defendant's Motion for Summary Judgment.

---

[1] Apparently, Plaintiffs spell their last name in multiple ways, using "Hefazi" in D.C. Superior Court and "Hafezi" before this Court.  As such, their Complaint in D.C. Superior Court, as well as the caption of that case, uses the "Hefazi" spelling, while their Complaint here – and this caption – uses the "Hafezi" spelling.  This Memorandum Opinion shall follow Plaintiffs' nomenclature, which creates certain inconsistencies.

## I: BACKGROUND

*A.     The Decision to Renovate and Improve 2803 Q Street*

Plaintiffs' action stems from improvements and additions made by Defendant CDI to a property in the Northwest quadrant of the District of Columbia.[2]  Currently, three properties sit on Q Street alongside one another: 2805 Q Street on the West, 1600 28th Street on the East, and 2803 Q Street in the center between the two other properties.  These three properties originally consisted of one parcel, which was subdivided by the owner in 1976.  As such, they share a common basement, accessible only from the rear of 2803 Q Street.  Moreover, some time prior to 1976, a wall was constructed between the 2803 Q Street property and the 28th Street property, and three windows were built into the wall.  This action revolves around these two properties divided by a wall, 2803 Q Street and 1600 28th Street, NW – 2805 Q Street is owned by individuals not party to either Plaintiffs' present or previous action, and is not particularly relevant to this suit.

Plaintiffs purchased 2803 Q Street on June 15, 1999, and 1600 28th Street on September 28, 2000.  On September 29, 2000, Plaintiffs sold the 2803 Q Street property to James and Patricia Peva.  As part of this sale, the Pevas executed an easement for the benefit of the Hafezi property providing access to the one water heater (along with the "circular chimney flue") servicing both properties.  Shortly thereafter, the Pevas sold the 2803 Q Street property to Michael Stiglitz.

Soon after purchasing the 2803 Q Street property, Mr. Stiglitz decided to make improvements to the property.  Three general building permits were issued to Stiglitz by the District

---

[2] The Court's discussion of both the factual background of this action, and Plaintiffs' earlier suit against Michael Stiglitz in D.C. Superior Court, is drawn in large part from the District of Columbia Court of Appeals' "factual summary" in *Hefazi v. Stiglitz*, 862 A.2d 901, 903-907 (D.C. 2004).  Much of the factual and procedural history of this case and Plaintiffs' prior action is essentially undisputed by all parties.

2

of Columbia government, over the objection of Plaintiffs, who voiced their displeasure in a series of letters to the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA"). The three relevant building permits issued included: (1) an October 19, 2001 permit for interior work on his home; (2) an October 9, 2002 permit to replace windows and doors on his house; and (3) a January 14, 2002 permit for an addition to the rear and side of his property. At the time, Plaintiffs objected to the planned construction work because they contended that the proposed work "[n]ot only will . . . entail attaching to [Plaintiffs'] exterior wall, [but] it would also block the window which currently exists on that side, as well as block a basement area and deny access to the chimney for repairs." Plaintiffs repeatedly contested the DCRA's conclusion that the window in the west wall could be sealed under the District of Columbia Building Code ("BOCA").

Upon the issuance of the three permits, Stiglitz hired Defendant CDI in late 2001 to totally renovate the interior of his property and to design and construct an addition that extended his house adjoining, and attached to, the west wall of Plaintiffs' property. On or about February 2002, Defendant CDI commenced construction of Stiglitz's property at 2803 Q Street.

  B.  *Plaintiffs' Lawsuit in D.C. Superior Court*

Following the commencement of construction on Stiglitz's property, Plaintiffs filed a lawsuit against Stiglitz in D.C. Superior Court on March 12, 2002 concerning their alleged right of physical access to the chimney flue through an easement allegedly running with the land, and the sealing of the window in the west wall dividing the two properties. *See* Def.'s Mot. for Summ. J., Ex. A (Compl., *Hefazi v. Stiglitz*, Civ. No. 02-1781 (D.C. Mar. 12, 2002)). Plaintiffs' Complaint against Stiglitz alleged five central counts. *Id*. In Count I, Plaintiffs sought a declaratory judgment "establishing the existence and extent of the easement, and declaring their rights with respect to the window in question." *Id*. ¶ 16. Count II alleged nuisance due to an "intention, unreasonable,

negligent and/or reckless" "invasion of Plaintiffs' interest in the private use of their land and/or the easement." *Id*. ¶ 18.  Count III claimed trespass in that "Defendant[] and or [his] agents, contractors, or assigns have entered Plaintiffs' property and/or the easement and have caused a thing or third person to enter said property and/or easement, and/or failed to remove from the easement things they were under a duty to remove." *Id*. ¶ 22.  Count IV alleged "obstruction and/or interference with Plaintiffs' easement and/or property." *Id*. ¶ 25.  Finally, Count V claimed intentional infliction of emotional distress because "Defendant's action of obstructing Plaintiffs' use and enjoyment of the easement after Plaintiffs' objection thereto, and the sealing of the window, despite Plaintiffs' objections thereto, constitute extreme and outrageous conduct which intentionally or recklessly caused Plaintiffs severe emotional distress." *Id*. ¶ 28.  In addition, Plaintiffs sought a preliminary injunction, designed to preclude both interference with their alleged access to the chimney flue, and the sealing of the window in the party wall.  *Id*. ¶ 30.  Plaintiffs also requested compensatory and punitive damages.  *Id*. at 8-9.

     Subsequently, around February 2003, Stiglitz filed a motion for summary judgment, claiming that the chimney flue issue had been resolved by the parties; asserting that Plaintiffs had acquired no easement of air and light by implication or prescription; indicating that Plaintiffs failed to show outrageous conduct in support of their claim for intentional infliction of emotion distress; and contending that Plaintiffs were not entitled to punitive damages as a matter of law.  Plaintiffs filed no opposition to Stiglitz's motion for summary judgment, despite the fact that the trial court gave them additional time to respond.

     In April 2003, Plaintiffs and Stiglitz filed a joint motion to add a third party defendant to the case – CDI.  On April 11, 2003, the trial court docketed an order granting "Plaintiffs . . . leave to file an Amended Complaint and the Defendant . . . leave to file a Cross-Claim against the third-party

contractor . . . ." Following this order, Stiglitz filed a "Third Party Complaint against Construction Development, Inc." in mid-April 2003. In this third-party complaint against CDI, Stiglitz alleged that any damage done to Plaintiffs' property was the fault of CDI, and should Plaintiffs recover any damages against him, the same amount should be awarded in his favor against CDI. Later, on April 21, 2003, Plaintiffs moved to stay proceedings on Stiglitz's motion for summary judgment in light of the trial court's ruling that an amended complaint could be filed against CDI, the third-party contractor.

Notwithstanding Plaintiffs' motion to stay, the trial court granted Stiglitz's motion for summary judgment and docketed its order on April 23, 2003. This order noted that Stiglitz's motion was "unopposed" and granted the motion "for good cause shown" without further explanation. *See Hefazi v. Stiglitz*, Civ. No. 02-1781 (D.C. Apr. 23, 2003) (Combs Greene, J.). Simultaneously, the trial court "denied without prejudice, but as moot," Plaintiffs' motion to stay proceedings on the motion for summary judgment, pointing out that Plaintiffs had failed to respond to the motion for summary judgment, even after being granted additional time with which to respond.

Following the trial court's April 23, 2003 dismissal of Plaintiffs' case in favor of Stiglitz, Plaintiffs filed two motions. First, Plaintiffs filed an Amended Complaint against Stiglitz that also named CDI on May 6, 2003. *See* Def.'s Mot. for Summ. J., Ex. B (Am. Compl., *Hefazi v. Stiglitz*, Civ. No. 02-1781 (D.C. May 6, 2003)). Second, Plaintiffs submitted a Motion to Reconsider on May 7, 2003, requesting that the trial court vacate the order granting summary judgment and asking that the court reconsider the order denying their motion to stay proceedings on the summary judgment motion. Stiglitz opposed both of these filings. On May 16, 2003, the trial court denied Plaintiffs' motion to vacate the order granting summary judgment, noting that "[e]ven in the motion

5

to vacate, plaintiffs fail to oppose the motion for summary judgment or indicate any opposition is forthcoming." The May 16, 2003 Order further emphasized that Plaintiffs' attempted Amended Complaint was untimely, as the trial court's order of April 11, 2003 granting leave to amend specified "that the Plaintiffs are granted leave to file an Amended Complaint and the Defendant is granted leave to file a Cross-Claim against the third-party contractor within 10 days from the date of this Order"; by waiting over ten (10) days, Plaintiffs had waived the right to file an Amended Complaint.

Plaintiffs then filed a timely appeal of the trial court's rulings. In a ruling issued on December 2, 2004, the District of Columbia Court of Appeals denied Plaintiffs' appeal. *See Hefazi v. Stiglitz*, 862 A.2d 901 (D.C. 2004). Specifically, the Court of Appeals concluded that: (1) the trial court had not abused its "discretion in the denial of appellants' motions to stay, vacate, and reconsider," *id.* at 908; (2) the basement easement granted to Plaintiffs by the Pevas did not prohibit the enclosure of the chimney flue, and no facts in the record showed that Plaintiffs had been denied access to the flue, which continued to provide service to their property, *id.* at 909; (3) with respect to the window in the west wall, Plaintiffs could not demonstrate that they had acquired either an easement by prescription, *id.* at 911-12, or an easement by implication that would have included an implied reservation of air and light in the window, *id.* at 912-13. Accordingly, the Court of Appeals affirmed the judgment of the trial court. *Id.* at 913.

C.   *Plaintiffs' Lawsuit in this Court*

Following the District of Columbia Court of Appeals' rejection of Plaintiffs' appeal, Plaintiffs brought this action before this Court against Defendant CDI on December 20, 2004. *See* Compl. at 1. In their current Complaint, Plaintiffs contend that:

During the course of the construction, which concluded sometime in December

>2002, Defendant CDI caused, or permitted to be caused, physical structural damage to Plaintiffs' property, including multiple long and wide cracks on the west wall and the adjoining wall of the Hafezi property from the basement to the 3rd floor; interruption of services to Plaintiffs' property; and generally denied Plaintiffs the quite use and enjoyment of their property. The damage and disruptions also including plumbing and plumbing fixtures by contractors beating and hammering on the exterior wall of the Hafezi property; a hole in the exterior wall extending into the hallway of the Hafezi property; dislodging plaster, drywall, and similar debris into the Hafezi property, causing quantities of dirt, dust, and debris to spread throughout the Hafezi property; and disrupting telephone and cable television services to the Hafezi property.

*Id.* ¶ 8. These allegations are virtually identical to certain allegations made by Plaintiffs in D.C. Superior Court against Stiglitz, and in their attempted Amended Complaint that included CDI. For example, in these previous filings, Plaintiffs asserted that:

>During the course of the construction to date, Defendant has caused physical damage to Plaintiffs' property, interruption of services to Plaintiffs' property, and generally denied Plaintiffs the quiet use and enjoyment of their property. The damage and disruptions include, but are not necessarily limited to, the following:
>
>a. Damage to plumbing and plumbing fixtures by contractors beating on the exterior wall;
>b. Creating a hole in the exterior wall extending into the Hefazi Property and dislodging plaster, drywall, plaster [sic], and similar debris into the Hefazi Property;
>c. Causing quantities of dirt, dust, and debris to spread throughout the Hefazi Property;
>d. Depriving the Hefazi Property of light and air.

Def.'s Mot. for Summ. J., Ex. A (Compl., *Hefazi v. Stiglitz*, Civ. No. 02-1781 (D.C. Mar. 12, 2002)) ¶ 12; *id.*, Ex. B (Am. Compl., *Hefazi v. Stiglitz*, Civ. No. 02-1781 (D.C. May 6, 2003)) ¶ 13.

In the present suit, Plaintiffs allege three causes-of-action against Defendant CDI. First, Plaintiffs contend that they are the victims of "common law negligence by Defendant." Compl. ¶ 10. Second, Plaintiffs contend that CDI's actions constituted a breach of Plaintiffs' "quiet enjoyment of property." *Id.* ¶ 11. Third, and finally, Plaintiffs contend that CDI, during its

7

construction work on the Stiglitz property at 2803 Q Street, committed "common law trespass." *Id.* ¶ 12. "As a result of Defendant's conduct," Plaintiffs claim that they "have sustained injury that entitles them to actual and compensatory damages in excess of $75,000." *Id.* ¶ 13.

Following extended discovery in this action, Defendant CDI filed its motion for summary judgment on December 13, 2005. *See* Def.'s Mot. for Summ. J. CDI's motion centers on only one argument – Defendant's contention that "[t]he Plaintiffs' action is barred as a matter of law by *res judicata*." *Id.* at 10. Plaintiffs filed their "Response to Defendant's Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure" (hereinafter, "Plaintiffs' Opposition") on January 10, 2006, and corrected this filing through an errata submitted on January 19, 2006. CDI chose not to file a reply to Plaintiffs' Opposition.

## II: LEGAL STANDARDS

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the summary judgment standard, Defendant, as the moving party, bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and by [his] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251, 106 S.Ct. 2505 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50, 106 S.Ct. 2505 (internal citations omitted). "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587, 106 S.Ct. 1348 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

### III: DISCUSSION

The doctrine of *res judicata* – i.e., "claim preclusion" – bars a claim when there has been a final judgment on the merits in a prior suit involving the same parties or their privies and the same

cause of action. *See Drake v. Fed. Aviation Agency*, 291 F.3d 59, 66 (D.C. Cir. 2002). *Res judicata* plays a central role in advancing the "purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). As the Supreme Court has emphasized: "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* at 153-54, 99 S.Ct. 970; *see also Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981) (noting that the purpose of *res judicata* is to "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and to prevent serial forum-shopping and piecemeal litigation").

Four factors must exist for *res judicata* to apply, there must be: (1) an identity of parties or their privies in both suits; (2) a judgment rendered by a court of competent jurisdiction; (3) a final judgment on the merits; and (4) an identity of the cause of action in both suits. *See U.S. Indus., Inc. v. Blake Constr. Co.*, 765 F.2d 195, 205 n.21 (D.C. Cir. 1985); *Paley v. Estate of Ogus*, 20 F. Supp. 2d 83, 87 (D.D.C. 1998). Determining whether a particular ruling fulfills each factor for *res judicata* to apply requires a careful assessment of what each factor demands. As such, the Court shall carefully examine each factor in turn, applying the relevant law to the situation encountered by Defendant CDI in this case.

    A.    *Identity of Parties or Their Privies*

For the purposes of *res judicata*, courts have long held that "parties nominally different may be, in legal effect, the same." *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402, 60 S.Ct.

907, 84 L.Ed.2d 1263 (1940); *see also* 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4449 (3d ed. 2001). As such, claim preclusion will apply to bar relitigation of a plaintiff's claims if there is an identity between the parties in each suit or if the parties to the second suit were in privity with the parties to the first action. *See Montana*, 440 U.S. at 153, 99 S.Ct. 970; *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). "A privy is one so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case." *Smith v. Jenkins*, 562 A.2d 610, 615 (D.C. 1989) (citing *Jefferson Sch. of Soc. Sci. v. Subversive Activities Control Bd.*, 331 F.2d 76, 83 (D.C. Cir. 1963)). "The 'orthodox categories' of privies are 'those who control an action although not parties to it . . .; those whose interests are represented by a party to the action . . .; [and] successors in interest.'" *Id*. (quoting *Lawlor*, 349 U.S. at 329 n.19, 75 S.Ct. 865); *cf. Am. Forest Res. Council v. Shea*, 172 F. Supp. 2d 24, 31-32 (D.D.C. 2001) (discussing the uncertain "doctrine of virtual representation," which falls under the "adequately represented" category).

CDI claims that it meets the "identity of parties" prong of the *res judicata* analysis, asserting that "CDI was a Defendant in the first suit brought by the Hafezis, or was at least in privity with Defendant Stiglitz at that time." Def.'s Mot. for Summ. J. at 8. Each contention is without merit.

First, CDI contends that "[b]ecause CDI was briefly a party to the prior action, there exists an identity of parties." *Id*. According to CDI, "[f]ollowing the commencement of the original action, Mr. Stiglitz filed a Third-Party Complaint against CDI after receiving leave from the court to do so. Over a month later, the court granted Mr. Stiglitz's Motion for Summary Judgment and the suit ended." *Id*. at 8-9. As such, CDI asserts that "[f]or a substantial period prior to the termination

of the action, CDI was a party to the first suit." *Id*. at 9.

Upon a review of the background of Plaintiffs' Superior Court case, it is clear that CDI's interpretation plays fast and loose with the actual background facts in that suit. It is certainly true that, following the trial court's April 11, 2003 order, Stiglitz filed a "Third Party Complaint against Construction Development, Inc." in mid-April 2003 in which he alleged that any damage done to Plaintiffs' property was the fault of CDI, and should Plaintiffs recover any damages against him, the same amount should be awarded in his favor against CDI. *See Hefazi*, 862 A.2d at 907. While this third-party complaint certainly made CDI a party to the overall suit, and "[i]dentification of a present party as a party to a prior action ordinarily makes the rules of preclusion applicable," *see* 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4449 at 335 (3d ed. 2001), certain circumstantial considerations undermine this generalization in this case.

First, less than two weeks after Stiglitz filed his third-party complaint against CDI, the trial court granted his previously-filed motion for summary judgment as "unopposed" and "for good cause shown," with no further explanation. *See Hefazi*, 862 A.2d at 907. Accordingly, CDI was a party to the suit for less than two weeks, and the court order dismissing the suit referred only to Stiglitz, not CDI. Indeed, because Stiglitz emerged victorious due to Plaintiffs' default, the trial court was not required to deal with his third-party action for indemnification or address any potential fault on the part of CDI. Second, in their previous action in D.C. Superior Court, Plaintiffs themselves never (successfully) asserted a (permissive cross-)claim against CDI in that action. While Plaintiffs did attempt to file an Amended Complaint adding CDI to the suit on May 6, 2003, the trial court denied this attempt on May 16, 2003 because (1) it had already awarded summary judgment in favor of Stiglitz, closing the case; and (2) Plaintiffs' attempt was untimely, as it was

outside the ten-day period provided by the Court in its April 11, 2003 order. *Id*. Third, it does not appear that CDI ever made an appearance in the prior Superior Court action. The District of Columbia Court of Appeals' opinion does not reference whether – nor does CDI now assert that – CDI filed an appearance, answer, or other responsive document in that case. Indeed, the facts are unclear as to whether CDI was even served with Stiglitz's third-party complaint prior to the dismissal of Plaintiffs' action. Upon appeal, Stiglitz alone defended the trial court's summary judgment decision; CDI made no appearance and provided no assistance. *Id*. at 903.

Given these factors, the Court concludes that CDI was simply not an "adversary in fact" to Plaintiff in its previous lawsuit, and falls outside of the definition of a "party" for the purposes of *res judicata*. *See* 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4450, at 362-65 (3d ed. 2001); *see also id*. § 4449 at 336 ("A party to a prior action should not be precluded, however, if he was involved only as a nominal party or in a specially circumscribed and subordinate role."). Perhaps realizing the problems with its "identity of the parties" argument, CDI also "argues in the alternative that CDI was at least in privity with the Defendant in the prior action, and that privity of parties satisfies the requirement of identical parties for *res judicata* purposes." Def.'s Mot. for Summ. J. at 9. While at first glance CDI's privity argument appears to have greater traction, it ultimately proves to be without foundation.

CDI's privity argument flows along these lines. First, CDI asserts – correctly – that "[i]t is undisputed that Stiglitz contracted with CDI to perform the work in question." *Id*. Second, CDI contends that "[a] contractor is the agent of a homeowner who has hired the former to conduct work on the premises." *Id*. (citing *Levy v. Currier*, 587 A.2d 205, 207 (D.C. 1991)). As such, CDI concludes that "Stiglitz and CDI shared an agency relationship." *Id*. Finally, while CDI admits that

13

"agents and principals are not ordinarily in privity for *res judicata* purposes," it stresses that "the District of Columbia has found that privity exists when 'the prior action concerned a matter within the agency [relationship].'" *Id.* (quoting *Major v. Inner City Prop. Mgmt.*, 653 A.2d 379, 381 (D.C. 1995)). Because "[t]he suit between Hafezi and Stiglitz concerned a matter within the agency relationship," i.e., "the work done by CDI on the Stiglitz residence," CDI claims that "[t]he parties were in privity for *res judicata* purposes." *Id.*

The problem with CDI's reasoning is the second premise underlying its attempted syllogism: its assertion that a contractor becomes an agent of the homeowner when contracted to do work on the homeowner's premises. Contrary to CDI's citation, the District of Columbia Court of Appeals' decision in *Levy* does not stand for this proposition. Rather, *Levy* stands for the proposition that the contractee and contractor generally do <u>not</u> share a principal-agent relationship, and the contractee (i.e., the homeowner) is virtually never liable for injuries caused by an independent contractor. *See Levy*, 587 A.2d at 209. As the *Levy* court noted,

> [t]he well-established general rule in this jurisdiction is that when a person hires another to do certain work, reserving no control over either the work or the workmen, a relationship of contractee and contractor exists (as opposed to master and servant) and the contractee is not liable for injuries to a third party resulting from the work of the independent contractor.

*Id.* (citations omitted). The central exception to this rule protecting contractees who hire independent contractors is the "inherently dangerous" activity doctrine; that is, when a contractee "employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract," the contractee is liable for any injuries resulting from the independent contractor's work. *Id.* (quoting Restatement (Second) of Torts § 427 (1965)).

Here, CDI has introduced no facts that would indicate the Stiglitz was anything more than an independent contractee of its construction services; there is no indication of a master-servant, agent-principal relationship. Moreover, there are no facts in the record that would indicate that CDI's work on the 2803 Q Street property was somehow "inherently dangerous." As such, CDI cannot be considered an "agent" of Stiglitz, and must be instead viewed as an independent contractor liable for its own alleged tortious conduct relating to the alleged injuries arising out of its construction activities in and around Plaintiffs' property. Accordingly, because CDI was neither a "party" to the prior action for the purposes of *res judicata*, nor was it in "privity" with Plaintiffs' actual "adversary in fact," i.e., Michael Stiglitz, CDI cannot meet the first prong of the *res judicata* analysis – "identity of parties." While this failure necessarily precludes Defendant's Motion for Summary Judgment, the Court shall continue with the remaining prongs of the *res judicata* test in order to completely flesh out its discussion.

B.   *Judgment Rendered By a Court of Competent Jurisdiction*

In order to establish *res judicata*, the moving party must also show that the judgment in question was rendered by a court of competent jurisdiction. *See Brannock Assocs., Inc. v. Capitol*, 807 F. Supp. 127, 134 (D.D.C. 1992). Here, Plaintiffs do not contest that the District of Columbia Superior Court and the District of Columbia Court Appeals were competent courts with jurisdiction over their previous claims. As such, CDI does meet the second prong of the *res judicata* analysis.

C.   *A Final Judgment on the Merits*

To meet the third prong of the *res judicata* analysis, the moving party must establish that the previous judgment rendered by a court of competent jurisdiction was a final judgment on the merits of the case. *See Polsby*, 201 F. Supp. 2d at 48; *see also U.S. Indus.*, 765 F.2d at 205-06. "A

traditional judgment on the merits of a case is one that disposes of the underlying cause of action." *Id.* (citing *Cromwell v. County of Sac.*, 94 U.S. 351, 352, 4 Otto 351, 24 L.Ed. 195 (1876)). Generally, a judgment is considered "on the merits" when a court renders a decision after considering the legal claim. *See Harper Plastics, Inc. v. Amoco Chems. Corp.*, 657 F.2d 939, 943 (7th Cir. 1981); 18 J. MOORE, MOORE'S FEDERAL PRACTICE § 131.30[3][a] (3d ed. 2000). In other words, a ruling is a judgment on the merits if it "is based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction, or form." *Id.* (quoting *Fairmont Aluminum Co. v. Comm'r*, 222 F.2d 622, 625 (4th Cir. 1955)).

As noted above, *see supra* Section III(A), the decision by the D.C. Superior Court to grant Stiglitz's motion for summary judgment as "unopposed" and "for good cause shown" certainly was not a final judgment on the merits with respect to any potential liability faced by CDI. Simply, the trial court never made any adjudication on any issue of fact or law regarding CDI's conduct or liability to Plaintiffs that could affect the instant action: Plaintiffs were never able to successfully assert a cross-claim against CDI; the Superior Court's decision makes no mention of CDI whatsoever; the Court of Appeals' subsequent adjudication focuses solely on arguments surrounding Stiglitz, who was the only "appellee" before the court; and there is no evidence that CDI ever made an appearance or proffered any argument in the previous action. Specifically, the local courts that dealt with the previous case <u>never</u> held in entering final judgment in favor of Stiglitz that CDI was free of liability to Plaintiffs for the conduct central to this action, wherein Plaintiffs assert:

> During the course of the construction, which concluded sometime in December 2002, Defendant CDI caused, or permitted to be caused, physical structural damage to Plaintiffs' property, including multiple long and wide cracks on the west wall and the adjoining wall of the Hafezi property from the basement to the 3rd floor; interruption of services to Plaintiffs' property; and generally denied Plaintiffs the quite use and enjoyment of their property. The damage and disruptions also including plumbing and plumbing fixtures by contractors beating and hammering on

16

    the exterior wall of the Hafezi property; a hole in the exterior wall extending into the hallway of the Hafezi property; dislodging plaster, drywall, and similar debris into the Hafezi property, causing quantities of dirt, dust, and debris to spread throughout the Hafezi property; and disrupting telephone and cable television services to the Hafezi property.

Compl. ¶ 8. Accordingly, the Court concludes that CDI also fails to meet the third prong of the *res judicata* test – the requirement that the previous judgment constitute a final judgment on the merits with respect to its potential liability.

    D.    *Identity in the Cause of Action*

    Finally, in order to establish *res judicata*, the moving party must establish that the two cases implicate the same cause of action. *See Polsby*, 201 F. Supp. 2d at 50; *see also Faulkner v. Gov't Employees Ins. Co.*, 618 A.2d 181, 183 (D.C. 1992) ("*Res judicata* does not bar litigation of an issue merely because it is in some remote way related to an issue litigated in a prior action."). A cause of action includes "'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *Smith*, 562 A.2d at 613 (quoting Restatement (Second) of Judgments § 24(1) (1982)). To determine whether cases involve the same cause of action, the D.C. Circuit has adopted the "pragmatic, transactional" approach found in the Restatement (Second) of Judgments § 23(2) (1982). *See U.S. Indus.*, 765 F.2d at 205. "Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'" *Drake*, 291 F.3d at 66 (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)). In pursuing this inquiry under the transactional approach, the court considers "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *U.S. Indus.* at 205; *see also I.A.M.*

17

*Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 n.5 (D.C. Cir. 1983); 1B J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 0.410[1] (2d ed. 1983).  Moreover, the "'the transaction' or 'occurrence' is the subject matter of a claim, rather than the legal rights arising therefrom; additions to or subtractions from the central core of fact do not change this piecemeal identity so as to support piecemeal appeals.'" *Smtih*, 562 A.2d at 613 (quoting *Clark v. Taylor*, 163 F.3d 940, 942-43 (2d Cir. 1947)).

      Given the fact that Plaintiffs never brought any claims against CDI in the first action, and CDI was never an "adversary in fact" to Plaintiffs in that suit, it is hard to conceive of how Plaintiffs' causes of action in this case could mirror their previous claims against "Defendant" CDI. Indeed, while their claims against CDI do share superficial similarities with their previous claims against Stiglitz, there are actually substantial differences between the two complaints filed by Plaintiffs against the two (former and current) defendants.  Plaintiffs' claims against Stiglitz were directed at concerns regarding access to the chimney flue servicing both properties, *see Hefazi*, 862 A.2d at 908-09, and an argument that Stiglitz's remodeling and expansion infringed upon their easement regarding the west wall and the window thereto, *id.* at 909-12.  In contrast, Plaintiffs' claims against CDI are not directed at an allegation that Stiglitz or CDI somehow infringed on any property rights/easements that Plaintiffs may have possessed.  Rather, Plaintiffs' claims against CDI in this suit are directed at alleged actual damage inflicted upon Plaintiffs' property during CDI's construction work; here, Plaintiffs contend that CDI negligently "caused[] physical structural damage to Plaintiffs' property," interrupted services, trespassed upon Plaintiffs' property, and interfered with Plaintiffs' quite enjoyment of their property.  *See* Compl. ¶¶ 8-12.  Because CDI was not a party for the purposes of *res judicata* to the previous action, and because Plaintiffs' claims in this action focus on a different type of activity and alleged harm, the Court concludes that CDI also

fails to meet the fourth prong of the *res judicata* analysis.

## IV: CONCLUSION

For the reasons set forth above, the Court shall deny Defendant's Motion for Summary Judgment. An Order accompanies this Memorandum Opinion.

Date: April 14, 2006

                */s/*
                COLLEEN KOLLAR-KOTELLY
                United States District Judge